First of all, may it please the court and Mr. Victor Matthew Lawrence, good morning. David Gonzalez appearing on behalf of the petitioner Gary Tomczyk here in Las Vegas, Nevada. The primary issue to be decided in this case is the applicability of INA section 241A-5 and that's a reinstated order of exclusion that occurred from a hearing on June 23, 1990. I want to begin my argument by pointing out that the effective word is illegal reentry. So a person who enters illegally can have a prior exclusion or deportation order reinstated. It's our position that Mr. Tomczyk did not reenter the United States illegally. When he was excluded, he had a one-year restriction from reentry. He's a Canadian citizen and he did actually wait a year and one day, therefore he was not required under 101A-16 to seek the permission of the Attorney General to legally reenter the United States. He's a Canadian citizen, he can enter based upon inspection and admission. That's exactly what happened. I want to talk a little bit about the difference between illegal and lawful. So if the statute uses words like illegal, it's for a reason. Congress intended to allow reinstating for people who could be, in my opinion, successfully prosecuted for reentry after having been deported or excluded. And that's because the word illegal is generally defined as contrary to or forbidden by law, especially criminal law. 8 U.S.C. section 1326 describes the types of persons who are subject to prosecution who have been ordered excluded and illegally returned. And Mr. Tompkins does not fall within that definition. He waited a year and a day, was not required to get the express consent of the Attorney General to reenter. And the manner and method by which he reentered is actually sanctioned under the law, under 245A. Any person who is admitted and inspected can later adjust status. Before you go any further, my primary question is going to be how do you distinguish this case from Tamayo-Tamayo versus Holder? So I think Tamayo-Tamayo is a red herring. And the reason it's a red herring is because Tamayo-Tamayo made a distinction between a procedurally lawful admission, inspection admission, and a substantive admission where the Attorney General expressly granted permission to reenter. And Tamayo-Tamayo, in my opinion, doesn't really address the language in 241A.5, which talks about the illegal reentry, subject to a criminal prosecution. And so Tamayo versus Tamayo was actually a fraudulent entry. So to the extent that it was procedurally regular because it was an inspected and admitted entry but laced with fraud, under either definition, procedurally lawful or substantive, it wouldn't meet that requirement either way. Was Tamayo a criminal entry or was it merely a fraudulent entry? It was merely a fraudulent entry. So it took what would have been a procedurally regular entry. And there's a line of cases that preceded Tamayo that talk about inspection and admission. And it's Arguellin and Quintalan. Both of those cases recite the fact that a person who has a procedurally regular entry can later adjust status, even if they're not asked any questions, even if they aren't truly inspected. As long as they present themselves and they're admitted, they can later adjust. So under 245A, 101, that would be procedurally effective. But even in those two cases that recognize a procedurally regular entry as being lawful, as long as there was, it would remain that way as long as there was no fraud, no false claim to citizenship, no attempt to pretend to be somebody that you're not or having false documents or anything fraudulent. That's the difference in Tamayo. If we were to adopt a position that any entry into the United States by someone who is not entitled to be in the United States and were to call that within the meaning of the relevant statute an illegal re-entry, how broadly would that sweep? That's contrary to the language of the statute. So there are many... I'm not... So I think... So broadly that would sweep? Yeah, it would be so broad that it can include all kinds of instances of people being admitted, which would be statutorily and procedurally correct, but who would then be subject to reinstatement for some other reason. It would sweep so broadly that it would erase the definition and the word and the language of illegal. That's why I think Tamayo in that line of cases is a red herring, because they lost focus on the fact. Counsel? Yeah. Yes. So when Mr. Tomczyk presented himself at the border in the car and said, we're just here for beers and were waved in, how long was he permitted to be in the United States? Was it nine months? I would say the maximum time would be six months. So in those days, in 1990, 1991, Canadian citizens were... And this is sanctioned under the policies and regulations of the Immigration and Naturalization Service. Canadian citizens could simply enter by presenting proof of Canadian citizenship. They would be permitted. So if your client had been picked up within, let's say, two weeks after he entered, five would be within that period where we would think, well, okay, you got waved in. That's sort of our bad. Maybe we don't get to reinstate this. But when he overstays the visa, does that change anything? Not really. And the reason for that is because it's irrelevant based upon what's available under 245A. Under 245A, the statute specifically says that a person, an alien who's been inspected and admitted, can adjust status. Quinn and Collin, Arguellin, all describe what that actually means. It's actually lawful. It's actually sanctioned under the statute. So to convert that lawful entry into an illegal entry is where I think, to my own mind, cases go wrong. Because they've watered, as your Honor has pointed out, they have watered it down so much that it applies much more broadly. So are you contending that Tamayo and Tellez were wrongly decided? Absolutely, Judge. Because they go down this path about substantively and procedurally lawful. Rather than focusing on the actual language of the 241A5, it says illegal. Illegal is subject to prosecution. And we have a statute for that. Now, Counselor, you understand that we don't have the authority to overrule Tamayo and Tellez. I'm not sure about that, Judge. Well, no, I'm going to tell you, this panel does not have the authority. This panel does not have the authority to do that. We are bound by that. And if you want to take an en banc argument, you can do that. But we don't have the authority to do that. Now, if we're bound by Tamayo and Tellez, do we have to rule against your client? Or do you want to try and distinguish them? Yeah, so then how I would, if I go down this path of procedurally versus substantively lawful entry, then I would say that Tamayo and Tellez are not dispositive of this case because both involve fraud with a procedurally regular entry. That's what converted what would otherwise be a procedural lawful entry into an unlawful entry despite the fact they were admitted and inspected because they were fraught with fraud. In this case, no fraud. In this case, he waited a year and a day after the exclusion order was entered and followed the advisory and the actual statute, 118.16. He didn't seek to enter within a year of the date he was excluded. Otherwise, he would have needed the permission of the Attorney General. And actually, that can be prosecuted under 8 U.S.C. section 1326. Go ahead, Judge. I'd like to come back to a question that Judge Vivey asked at the outset. So he comes in at the board where he says he was coming in for a few years. Was he legally entitled to come in for a few years, assuming he was then going to leave within a few days or a few months? Absolutely. What would have prevented him, Judge? Nothing. And the statute talks about illegal reentry. It doesn't talk about illegal stay. Right. So you're absolutely right, Judge. Let's hear from the government. We've taken you up to the end of your time, but we'll give you a chance to respond. Okay. Thank you very much. May it please the court. Victor Lawrence on behalf of the Attorney General. This court should deny this petition for review. This is a reinstatement of removal case, and the court needs to only look at three things to determine whether the agency appropriately complied with the reinstatement statute. Was Tomczyk subject to a prior order of removal? Was his identity validly confirmed? And did he unlawfully enter the United States after his order of removal? The record establishes that all three criteria are satisfied. Accordingly, this court should deny the petition. I'm afraid of erupting so quickly. I just heard that his entry was not illegal. His stay was illegal. How do you respond to that? Yes, Your Honor. We disagree with that. His entry was not legal. The fact that he received a notice saying that he could not come back within a year without the Attorney General's permission was just covering one ground of excludability. He still needs to present himself at the border and be inspected and admitted to the United States. Well, I understand that. He did that. He comes in. We're after the year, so we don't need to express permission. So what was illegal about his entry when he did come in? Because he had no right to be in the United States. He was not inspected by a border official. We do have a... Let me ask you. I know that Canadian border well. I grew up in the Northwest. I went back and forth across that border many, many times. And at the time he came across, Canadians came in fairly easily. Americans went into Canada fairly easily. What was it that made his status in the United States, after coming in, an illegal status if he was there for a short period? Because, Your Honor, regardless... And I've been through that border as well during my youth. When the border official asks you for your identification, there is a check to determine whether or not there's any reason that the individual is inadmissible from the United States. And had he actually presented himself at the border, the border official would have determined that he was inadmissible based on the prior exclusion order. Now, in 2016, when he was convicted for driving under the influence and came to the attention of the government once again, at that time, the border official, or the ICE official, pursuant to 8 CFR 241.8, did a check of the database to determine whether or not he was ever appropriately admitted to the United States. And the record reflects, at page 20, that the border official determined that there was never an admission to the United States as Mr. Tomczyk alleges occurred in 1991. And what made him inadmissible when he comes back into the United States finally over a year after the initial exclusion? Well, he was a Canadian citizen and he had a prior controlled substance violation that would have made him inadmissible. And the proof of that is that in 2003, and Mr. Tomczyk knew himself that he was inadmissible because in 2003, he sought to adjust his status to a lawful permanent resident. And by seeking to adjust his status, he also filed a waiver to deal with his inadmissibility based on his controlled substance conviction. So he was inadmissible at that time in 1991 when he tried to come into the United States. And he knew that, and the record shows that, because in 2003, he tried to overcome that with a waiver of inadmissibility. Now, is he inadmissible when he comes back a year plus, for the same reason he was excluded the first time around? That is to say, a prior drug conviction in Canada? Two things. The prior drug conviction, and he didn't have any legal right to be in the United States at that time. Well, without the prior drug conviction, assuming he's just an ordinary Canadian with no criminal past whatsoever, of course he's allowed to come into the United States. He may not be allowed to stay for a very long time, but of course he's allowed to come into the United States unless you've got some other basis than the fact that he's a Canadian, which I don't think you have. Well, I mean, yes, the prior drug conviction is something that he still would need a waiver of inadmissibility for to come back into the United States, but if the United States is... I now have that clear, and I'll get a response from the other side as to why that didn't make him inadmissible. I got it. Okay. Thank you. Counsel, I'd like to take you to AR-20, to the page that you referred us to, that first paragraph that says that he came in without inspection, and that this information was confirmed by the records. So is it the government's contention that he was not waived in by a border patrolman? Well, it's the government's contention that there's no record evidence other than Mr. Tomczyk's own personal statement that he was waived in by a border official. Got that. But counsel, let's assume for purposes of my question that I believed that he is credible. I haven't seen him. I don't know this. I'm just telling you for purposes of my question. Let's assume that he was waived in as he said he was. Does that change something? No, because... The United States had an opportunity to inspect him and decided for whatever, because it was late at night, because he looked like they'd seen him before, because the driver presented ID, because they were just coming for beers, to just waive the man. Hasn't he been inspected? Well, if he indeed presented himself to a border official, you could say he was inspected. But the question is whether it was a lawful entry or was it just a procedurally regular entry. And this is where we get into Tamayo Tamayo and Tellez versus Lynch. Because even if the border official made a mistake and waived him into the country, it's of no substance because he was still not validly and lawfully in the country at that time. But if we take your position, and that is to say anyone who comes into the country after inspection, that is to say comes to the border regularly, and the border patrol person waives him in without any questions. There's no fraud, there's no misrepresentation. But for some reason, they're not allowed to be in the United States. Is it your position that that person has entered unlawfully within the meaning of the statute? If that person has a factor in his background that makes him inadmissible to the United States, and he has been allowed to enter the United States, perhaps by error, I think, as you indicate, he is still unlawfully in the United States. He didn't ask any questions and he didn't say anything was untruthful. But you say that all of those people have entered unlawfully within the meaning of the statute. Yes, it's no different than if he crossed the border without inspection, because he's still, he's entering the United States. He has no legal right to be here. He's not a citizen. He has a background in which he has a conviction for a controlled substance. He has a prior exclusion order. He's not here legally in the United States. And whether or not somebody has made an error, if that were the case, and there's no evidence of that in the record, so we're really assuming facts that are not in the record. Well, no, there's evidence and you choose not to believe it. I'm sorry? There's evidence and you choose not to believe it. That is to say, he came to the border, he was waived the cross. No, well, that's his evidence. We have evidence that AR-20, which says that they did a data check and that he was never inspected. That's also on page 7 of the record, by the way, in addition to page 20. But shouldn't we send this to an IJ to get this figured out? Shouldn't the IJ be making a credibility determination, or at least looking at the reliability of your records? The question is, does it make a difference? I think your position has to be, it can't make a difference. Because if it does make a difference, then I think we have to send it to an IJ to get the credibility determination. So do you want to tell me why it can't make a difference, even if every word that he has said is absolutely true? Even if every word he said is absolutely true, and that he was waived in at the border, the government has complied with this. And again, we're not accepting that, but using your honor's scenario here. Even if everything is true and that he was waived in, the government appropriately, this court's consideration is whether the government complied with ACFR 241.8 and the removal statute at 1231.85. And they did that. They found that he had a prior order of removal. They validly confirmed his identity. And they determined, based on the check of the record, that he was not validly in the United States. I point the court specifically to ACFR 241.8A3, which says that the immigration officer shall attempt to verify an alien's claim, if any, that he or she was lawfully admitted. And that check, quote, shall include a check of service data systems available to the officer. That's 241.8A3. And that's exactly what the record says. If this story is true, that is to say, if he was waived and he's sitting in the backseat, the driver looks fine and waves him through, of course there would be no record. Let me change. I want to make Judge Fletcher's hypothetical a little tougher on you. What happens if he comes in with his buddies in the car and the Border Patrol official says, I need either a passport or a driver's license? Everybody gives them a current Canadian driver's license. The officer goes over, he does whatever checks he wants to, comes back, hands them back their driver's licenses, and for whatever reason, a glitch in your system, a mistaken entry, something, he says, you're good to go, welcome to the United States. Now what? It still doesn't matter, Your Honor, because he still has an admissibility ground based on his prior conviction. And in 1991, that would have been enough to keep him out of the United States. And here, you know, specifically had he presented a driver's license, I would presume that that would create a record in the services systems to indicate that this person was inspected at the border and let through. There's no record of that. But I just gave you a hypothetical in which he did present it, and the officer had all the information he needed, and for whatever reason, a mistake on our end, a data entry, a glitch in the system, the system was down, something. The officer says, you are good to go. I have inspected you in accordance with 241.8A3, and I've discharged my duty. Welcome to the United States. Are you still entitled to reinstate the order? Yes, because there would be no real distinction between that hypothetical and Tamayo Tamayo and Tellers v. Lynch, where the people were inspected, and for whatever reason, they were let through, but it was determined later that, in fact, they were inadmissible. Well, Tamayo had outright fraud. In Tellers, it's very close to fraudulent because she's just a day or two away from her removal order. That's as if the case that would be analogous here is if Tomsic had come back in the week after he got the exclusion order the first time, knowing full well that he had to have the Attorney General's permission. But it's no different, Your Honor. He still knew. Mr. Tomsic still knew in 1991 that he was coming illegally into the United States, and he knew that because in 2003, at least at that point in 2003, he realized that he was not here legally. Counsel, I have one question I want to get in before your time is up. If Judge Fletcher won't indulge me, I just have one question. It seems to me your position depends on our interpreting the term re-enters illegally in 1231A5 as being essentially equivalent to the person's status as being inadmissible. Your whole argument turns on that. And I'm wondering if, instead, we interpreted the term re-enters illegally, we basically pegged that concept to the ground that's covered by 1325 and 1326, as your opponent suggested we do, and as at least a couple of other circuits have suggested as the correct interpretation. And I just want to get your answer to, if we were to write an opinion that did that, why would we be wrong? So, I'm sorry. I need a clarification. When you say 1325 and 1326, I'm not sure I understood Counsel's point on that, because it's in his briefs. Sure, I'll clarify. So, the concept of re-entering illegally, one could say, since the term is undefined, that maybe we should reference the provisions that provide for criminal punishment of illegal re-entry. And that's 1325 and 1326. Maybe that's what Congress had in mind when it was speaking about re-entering illegally in 1231A5. So, why don't we borrow the meaning of that concept from those statutes and import it into 1231A5? I think if we were to do that here, Petitioner would prevail. So, I'm assuming that you're not in agreement with that position, and I wanted to get your response as to why we should not go down that alternative path. Sure. Thank you, Judge. So, the reason why is because the agency had an opportunity to consider the statute when it wrote the regulation at ACFR 241.8, where they specifically said that when dealing with an unlawful re-entry, the question is whether or not the alien was, quote, lawfully admitted, again, 241.8A3. And so, you know, when 241.8 refers to the statute 1231A5, on this particular instance of unlawful re-entry, they defined the term in the second sentence of that paragraph as whether or not the person was lawfully admitted. And how do you determine whether the person was lawfully admitted? You do a check, which shall include a check of the service data assistance, and that's exactly what was done here. And on a reinstatement order like this, there's very little that the court needs to do other than check off whether or not these things were complied with. And they have been in this case, and that's why the court should deny this petition. Thank you. Okay, thank you very much. Thank you. We took the government well over time. Why don't we move on? Thank you, Judge. Just briefly on the last point, if you look at 241.8A3, as the government has recited, that the language used in the regulation is different than the language in the statute. 241.8A3 begins by using the word illegal, but concludes by inviting an inquiry into what is lawful versus unlawful. How many times has the Ninth Circuit struck down regulations that reinterpret a statute and broaden it or limit it? That's exactly what's happening with this regulation by the government's argument that what Congress intended to restrict was lawful versus unlawful entry, and therefore we can interpret illegal to include unlawful. If Congress wanted to do that, they could have said it. They didn't. Well, I buy the argument, and I think we're going down the wrong path, that the words have meaning. Meaning of illegal means subject to criminal prosecution. It's a very limited interpretation. Mr. Tomzig would not have been subject to criminal prosecution when he entered in 1990. The government wasn't aware of his presence in 2003. And by the way, they have done nothing the entire time he's been here. They have not initiated prosecution, nor could they do it successfully. Let me point out a couple of other big things. One huge problem that I see, I invite the court to take a look at It's a case where the Ninth Circuit did not permit reinstatement of a prior deport order where a person had been criminally prosecuted for unlawful entry, and they found that the district court judge dismissed the indictment, finding that the deport order was invalid. That's exactly the position we're taking here, that this is an invalid deport order. The original deport proceedings were egregious. Due process. This automatic reinstatement of the ruling without anything else deprived the alien of due process. It's hard for you to hear, I'm asking you a question, but does that require finding a gross miscarriage of justice? I think it does, and I think we meet that requirement. I'm not sure you do. Let me ask you a different question though, and that is, you had represented that since he'd gotten past the one-year period during which he needed the permission of the Attorney General, he was entitled to come into the United States for a short period. I just heard from the government that he was not entitled to come into the United States or not entitled to be in the United States for the same reason he was initially excluded, that is to say he had a prior drug conviction. That strikes me as right. How do you respond? There is no prior drug conviction, Judge. Show me the document. Show me the tailored categorical analysis. Why was he excluded in the first place? That's why I'm saying it was egregious. There was no conviction document. There was no drug identified. Nothing was admitted. And by the way, what was the basis then for the first exclusion order? Say it again, Judge. What was the basis for the first exclusion order? A gut reaction from the immigration judge who had no evidence and no documents to establish he was excludable on the basis of a drug conviction. The government never produced that in any proceeding. It doesn't exist. There is no drug conviction. And an alien can't create a conviction or deportable or excludable offense by his own statement. Enrage Pichardo. It's a broad case. I have it here somewhere. Oh, it's a matter of Pichardo, an alien by his own statement and admission with regard to the nature of a criminal conviction cannot establish his own deportability or excludability. And that's because we don't do a factual inquiry when we make that decision. We do a legal analysis under Taylor that requires us to examine the conviction documents, the statute involved, and whether or not the drug involved is one regulated under our federal regulations and prohibited. No such analysis was ever... That's why I'm saying that initial hearing was egregious. His admission in 1991 was thoughtful. He was not excludable. If they had challenged his admission, he could have beaten that. He could have fought that in a hearing with an immigration judge just as he was given the opportunity to do in 1990. Thank you very much. We'll take both of you well over time. I understand why there's some interesting and difficult issues in the case. Thank you very much. Both of you, appreciate your arguments. Have a good day. Thank you very much. Thank you.
judges: W.fletcher, Bybee, Watford